IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERT EARL SIMPSON,** | : | CIVIL NO. 3:CV-05-1350 |
| Petitioner | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| **TROY WILLIAMSON,** | : | |
| Respondent | : | |

## MEMORANDUM AND ORDER

Petitioner, Robert Earl Simpson ("Simpson"), at the relevant time, confined at the Federal Correctional Institution at Allenwood, Pennsylvania ("FCI Allenwood") filed this petition for writ of habeas corpus on July 6, 2005. (Doc 1). A supplemental memorandum of law was filed on July 11, 2005. (Doc. 4). Respondent filed a response (Doc. 8-1) and supporting exhibits (Doc. 8-2) on August 17, 2005. The petition is ripe for disposition. For the reasons set forth below, the petition will be denied.

I. Background.

Following the conclusion of an investigation by the Federal Bureau of Investigations, on October 14, 2004, Simpson received an incident report which charged him with attempted introduction of any narcotics or related paraphernalia in violation of Section 111A of the Bureau of Prisons disciplinary code. (Doc. 8-2, p. 1). Following a "Special Investigative Service" ("SIS") investigation, it was concluded that "inmate Simpson attempted to introduce narcotics into the institution by having a former staff member bring a pair of sneakers with narcotics concealed inside them into the institution." (Doc. 8-2, p. 9).

On October 18, 2004, a Unit Disciplinary Hearing ("UDC") was held and the matter was

referred to the Disciplinary Hearing Officer. ("DHO"). At that time, Simpson was given a "Notice of Discipline Hearing before the DHO" and he indicated that he would like a staff member to represent him at the hearing. He also requested that inmate witness Burke appear at the hearing. Simpson was also provided with an "Inmate Rights at Discipline Hearing" form. His signature appeared on both forms.

The disciplinary hearing was held on November 10, 2004. Simpson's requested staff member appeared as his representative and Simpson presented the testimony of inmate witness "Burke." Simpson also submitted a number of redacted statements from the FBI investigation. Other evidence presented included the incident report, a July 1, 2004 memorandum from J. Lyons, Lieutenant with the SIS, an October 14, 2004 memorandum from "B. Feltman, SIS Lieutenant," which contained the statements of confidential informants.

In arriving at a determination of guilty, based upon the greater weight of the evidence, the DHO found that the evidence presented at the hearing corroborated the information contained in the incident report. As noted above, the DHO considered an October 14, 2004 Memorandum authored by Lieutenant Feltman. (Doc. 8-2, Attach. D, Respondent's Exhibit 1, submitted *in camera*). "Specifically, Lt. Feltman indicated through several confidential sources Simpson was involved in having narcotics introduced into the institution through the compromised staff [member][David Peifer ("Peifer")]. The narcotics would be placed inside of a shoe and brought into the institution by the compromised staff member. Several sources validated this statement." (Doc. 8-2, p. 21). The memorandum included statements of other

inmates involved as well as details of the operation of the scheme. The DHO relied on information provided by the confidential informants. He found them to be credible as they derived no known benefit from providing false information and, "by virtue of their position, are obligated to be truthful." (Id.). Simpson denied the charge as well as any association with the compromised staff member.

The following sanctions were imposed: sixty days of disciplinary segregation, disallowance of fifty-four days of Good Conduct Time, loss of phone, visit and commissary privileges for two years, and a disciplinary transfer. (Doc. 8-2, p. 21).

II. Discussion.

A habeas corpus petition pursuant to 28 U.S.C. § 2241 is the proper mechanism for a federal prisoner to challenge the "fact or duration" of his confinement. Preiser v. Rodriguez, 411 U.S. 475, 498-499 (1973). A violation of a prisoner's liberty interest may be addressed by a writ of habeas corpus only to the extent that the alleged violation impacts a prisoner's length of confinement. See Wolff v. McDonnell, 418 U.S. 539 (1974). Simpson's claim that his due process rights have been violated, and that the violation has resulted in the imposition of the sanction of loss of good conduct time, which lengthens his prison term, is properly brought in a habeas corpus petition.

While extreme limitations on the due process rights that arise from the Fourteenth Amendment have been imposed by the Supreme Court in Sandin v. Connor, 515 U.S. 472 (1995), the applicability of those protections to matters where an inmate is faced with the loss

3

of good conduct time credit, as is the case here, was left undisturbed. When an inmate is faced with the possibility of loss of good conduct time credits, due process requires that the prisoner receive: (1) written notice of the claimed violation at least twenty-four hours in advance of the hearing, (2) an opportunity to call witnesses and present documentary evidence in his or her defense when doing so would not be unduly hazardous to institutional safety or correctional goals, (3) assistance from a representative, if the charged inmate is illiterate or if complex issues are involved, and (4) a written statement by the factfinder as to evidence relied on and reasons for the disciplinary action. See Wolff, 418 U.S. at 564.

Simpson raises two issues concerning procedural irregularities. Simpson first challenges the fact that he was not able to call Peifer, the compromised staff member, as a witness or to secure answers to written questions directed at Peifer prior to the hearing. As pointed out by Respondent, there is no evidence in the record that Simpson requested Peifer appear as a witness. Further, even if Simpson had requested that Peifer appear, such a request would have been subject to concerns of institutional safety and correctional goals. Given the number of inmates involved in the scheme, there is no question that having Peifer testify at a hearing in the institution, or to provide responses to inmate questions would implicate serious institutional security concerns.

Simpson also takes issue with the fact that there was a delay in holding the hearing. The Bureau of Prisons' ("BOP") disciplinary process is fully outlined in Code of Federal Regulations, Title 28, Sections 541.10 through 541.23. These regulations dictate the manner in

4

which disciplinary action may be taken should a prisoner violate, or attempt to violate, institutional rules. The first step requires filing an incident report and conducting an investigation pursuant to 28 C.F.R. § 541.14. Staff is required to conduct the investigation promptly unless circumstances beyond the control of the investigator intervene. 28 C.F.R. § 541.14(b). "When it appears likely that the incident may be the subject of criminal prosecution, the investigating officer shall suspend the investigation, and staff may not question the inmate until the Federal Bureau of Investigation [FBI] or other investigative agency interviews have been completed or until the agency responsible for the criminal investigation advises that staff questioning may occur." Id. In the instant case, the FBI did conduct an investigation. Naturally, the FBI investigation caused delay in proceeding with a disciplinary hearing. However, such a delay is not contrary to Wolff. Wolff simply requires that an inmate be provided with written notice twenty-four hours prior to the hearing. It is clear from the record that once the FBI investigation concluded, the BOP complied with the requisite procedures, including providing Simpson with the requisite twenty-four hour notice.

Simpson also contests the sufficiency of the evidence. The disciplinary hearing officer's decision is required to be supported by "some evidence" in the record. See Superintendent v. Hill, 472 U.S. 445, 454 (1985); see also Young v. Kann, 926 F.2d 1396, 1402-03 (3d Cir. 1991) (applying Hill standard to federal prisoner due process challenges to prison disciplinary proceedings). Determining whether this standard is met does not require examination of the entire record, independent assessment of witness credibility, or weighing of the evidence; the

relevant question is whether there is any evidence in the record that could support the disciplinary hearing officer's conclusion. See Hill, 472 U.S. at 454.

In considering the evidence recited in the statement of facts section, *supra*, the court finds that there was "some evidence" to support the disciplinary hearing officer's decision.[1] See id. at 455-56 ("The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decision of prison administrators that have some basis in fact. . . . [N]o other standard greater than some evidence applies in this context."). Thus, the petition will be denied with respect to Simpson's claim that there was insufficient evidence to support the disciplinary hearing officer's decision.

Simpson also challenges the severity of the sanctions received. The sanctions that may be imposed upon a finding of guilt of a 100 level offense include disallowance of a minimum of forty days good conduct time, disciplinary transfer, up to sixty days of disciplinary segregation and loss of privileges for a certain period of time. See 28 C.F.R. § 541.13. Simpson is not entitled to relief on this ground as the sanctions imposed upon him are within the range permitted.

An appropriate order will issue.

---

[1] Simpson expresses dissatisfaction with the DHO's characterization of inmate Burke's testimony as to his knowledge of the scheme and Simpson's involvement in the events. Significantly, even if Simpson is correct in concluding that Burke's testimony was misrepresented, and the Court were to disregard the DHO's summary of Burke's testimony, in light of the magnitude of the information contained in the documentary evidence, there is still some evidence to support the DHO's decision

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT EARL SIMPSON,<br>Petitioner | : | CIVIL NO . 3:CV-05-1350 |
| | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| TROY WILLIAMSON,<br>Respondent | : | |

## MEMORANDUM AND ORDER

AND NOW, to wit, this 27 day of September 2005, for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The petition for writ of habeas corpus (Doc. 1) is DENIED.

2. The Clerk of Court is directed to CLOSE this case.

BY THE COURT:

s/James M. Munley
JUDGE JAMES M. MUNLEY
United States District Court